# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re           Case No. 10-81836-WRS
                Chapter 13
PEGGY ANN VAUGHN,

    Debtor

PEGGY ANN VAUGHN,

    Plaintiff          Adv. Pro. No. 14-8010-WRS

  v.

CENTRAL MISSISSIPPI
CREDIT CORPORATION,

    Defendant

## <u>MEMORANDUM DECISION</u>

This Adversary Proceeding was tried on November 16, 2015.  Plaintiff Peggy Ann Vaughn was present in person and by counsel Anthony B. Bush and Paul D. Esco.  Defendant Central Mississippi Credit Corporation was present by counsel Joseph E. Watson, III.  The Plaintiff alleges that the Defendant willfully violated the automatic stay and requests actual damages, punitive damages, costs, and attorneys' fees.  For the reasons set forth below, judgment is entered for the Plaintiff.

## I.  FACTS & PROCEDURAL HISTORY

### A.  The Mississippi Default Judgment

This is a case of mistaken identity that arose out of a simple spelling error.  In late 2013 Defendant Central Mississippi Credit Corporation ("CMCC") filed suit in the Justice Court of

Rankin County, Mississippi ("the Mississippi court") against Peggy Vaughan to collect a $666.26 deficiency balance stemming from the sale and repossession of a vehicle. CMCC's handwritten complaint to the Mississippi court correctly spelled Peggy Vaughan's last name as "Vaughan" in the declaration of the parties, but under a listing of Vaughan's employers CMCC's complaint included the notation "Both POE info for Peggy Vaughn." (Defendant's Ex. 1). The Mississippi court erroneously spelled Peggy Vaughan's last name as "Vaughn" in its summons for trial. (Plaintiff's Ex. 5). When Peggy Vaughan failed to answer or appear at trial, the Mississippi court entered default judgment in favor of CMCC and against "Peggy Vaughn" on January 22, 2014 in the amount of $666.26. (Plaintiff's Ex. 5).

## B. The Garnishment

CMCC did not file a motion with the Mississippi court to correct the misspelling of Peggy Vaughan's name on the default judgment. Instead, it filed a handwritten suggestion of garnishment with the Mississippi court requesting that a writ of garnishment be issued against First Student Management, LLC ("First Student").[1] (Plaintiff's Ex. 5). First Student is the employer of both Peggy Vaughan, who lives in Mississippi, and Plaintiff Peggy Ann Vaughn ("Plaintiff"), who lives in Alabama. Plaintiff works as a bus driver in Auburn, Alabama and has been a debtor in Chapter 13 bankruptcy since November 2010. (Case No. 10-81836). It is undisputed that Plaintiff has never owed a debt to CMCC.

---

[1] First Student also either does business as, or has related entities known as, "First America" and "First Transit, Inc." First Transit, Inc. answered the writ of garnishment. (Plaintiff's Ex. 5). Both First America and First Transit, Inc. are listed on Plaintiff's pay stubs. (Plaintiff's Ex. 2). To avoid confusion the Court will collectively refer to these entities as "First Student."

Both CMCC's handwritten suggestion of garnishment and the Mississippi court's writ of garnishment to First Student misspelled Peggy Vaughan's last name as "Vaughn," and neither listed Peggy Vaughan's Mississippi address or any part of her social security number. (Plaintiff's Ex. 5). Based on the documents submitted, it appears First Student forwarded the writ of garnishment to its payroll processor, Automatic Data Processing ("ADP"), and provided ADP with Plaintiff's social security number. (Defendant's Ex. 2). ADP sent a notice of withholding to Plaintiff that was dated March 21, 2014, and informed her that her paychecks were about to be garnished and that the withholdings would be remitted to CMCC. (Plaintiff's Ex. 1). The same day First Student sent an answer to the writ of garnishment that the Mississippi court received on March 28, 2014; the answer form contained a check box to indicate if the garnishee is in bankruptcy, but First Student left the box unchecked.[2] (Plaintiff's Ex. 5).

Plaintiff testified that upon receiving the notice of withholding from ADP, she called CMCC and informed its representative that she did not owe a debt to CMCC and that she was in Chapter 13 bankruptcy.[3] Henry Borne ("Borne"), CMCC's Recovery Manager,[4] testified that

---

[2] Plaintiff testified at trial that she had not informed First Student of her bankruptcy. Plaintiff is making her Chapter 13 plan payments pursuant to an income withholding order issued by this Court, but that order was directed to Plaintiff's other employer, Auburn City Schools. (Case No. 10-81836, Doc. 13).

[3] Plaintiff testified that she called CMCC in March 2014 but could not remember the exact date, and CMCC has no record of this conversation. The notice of withholding was dated March 21, 2014, which was a Friday. ADP's listed address on the notice is El Paso, Texas, and the Court assumes that standard mail would take 3 business days to travel from El Paso to Auburn. That means Plaintiff likely received the notice on or about March 26, 2014, and the Court finds that she called CMCC shortly after receipt.

[4] Borne testified that his department is responsible for recovering "lost assets," – *i.e.*, debt collection. It is apparent that his department filed the collection suit and the suggestion of garnishment with the Mississippi court. Borne is not an attorney.

CMCC keeps records of its communications with its clients, but that it does not keep a record of communications with non-clients because CMCC does not have an account number for those people. Borne also testified that CMCC frequently receives phone calls from debtors who say that they are not supposed to be garnished and that they investigate the facts when that happens. CMCC's account records for Peggy Vaughan do not have a notation of its March 2014 phone conversation with Plaintiff. (Plaintiff's Ex. 6). The Court found Plaintiff's testimony to be credible and finds that she informed CMCC on or about March 26, 2014 of her bankruptcy and of the fact that she did not owe any debt to CMCC. It is apparent that CMCC took no effective action in response to Plaintiff's communication. (Plaintiff's Ex. 6).

When Plaintiff realized that the mistake had not been corrected, she informed her bankruptcy counsel, Paul Esco ("Esco"), of the garnishment. Esco called CMCC on April 17, 2014 and informed it that Plaintiff was in bankruptcy and that she did not owe CMCC any debt; this time, CMCC cross-checked Peggy Vaughan's social security number with Plaintiff's and realized it had garnished the wrong person. (Plaintiff's Ex. 6). CMCC's representative promised Esco that CMCC would "have th[e] matter resolved post-haste." (Plaintiff's Ex. 6).

First Student pays Plaintiff bi-weekly. On April 18, 2014, ADP withheld $161.82 from Plaintiff's paycheck pursuant to the Mississippi court's writ of garnishment. (Plaintiff's Ex. 2). On May 2, 2014, ADP withheld $145.83 from Plaintiff's paycheck. (Plaintiff's Ex. 2). On June 13, 2014, ADP withheld $179.57 from Plaintiff's paycheck. (Plaintiff's Ex. 2). Finally, on June 27, 2014, ADP withheld $179.04 from Plaintiff's paycheck, totaling $666.26 withheld over the course of the four garnishments. (Plaintiff's Ex. 2).

-4-

In a letter written by CMCC[5] to "Jeff at First Student" on July 14, 2014, CMCC indicated that it "notified [Jeff] of the error" on April 17, 2014, the same day Esco called CMCC. (Plaintiff's Ex. 7). However, there is no other record of this alleged communication in the evidence; tellingly, neither CMCC's records for Peggy Vaughan's account nor Borne's subsequent affidavit mention any communication from CMCC to First Student on or around April 17, 2014. (Plaintiff's Ex. 6 and 12). Such a communication is likewise absent from First Student's and ADP's records. (Defendant's Ex. 2). Without more proof, the Court cannot give credence to such an oblique reference that CMCC contacted First Student about the garnishment mistake on April 17, 2014. Moreover, there is no other evidence that CMCC did anything to stop the garnishment until July 2014. The Court finds that CMCC did nothing to stop its garnishment of Plaintiff's paychecks through June 2014.

## C. The Adversary Proceeding

Plaintiff initiated this adversary proceeding against CMCC on June 30, 2014, alleging that CMCC willfully violated the automatic stay. (Doc. 1). CMCC was served with the complaint on July 11, 2014.[6] (Doc. 5). On July 14, 2014, CMCC sent First Student the aforementioned letter informing First Student of the garnishment error, and First Student contacted ADP the same day. (Plaintiff's Ex. 7; Defendant's Ex. 2). First Student responded to

---

[5] The signature on the letter is illegible, but to the casual eye it matches the signatures on the complaint and the suggestion of garnishment filed with the Mississippi court. It also matches Borne's signature from his affidavit and from CMCC's March 19, 2015 discovery responses. (Plaintiff's Ex. 12; Doc. 42). There is no other identification of the letter's author. Also, the letter contains CMCC's letterhead. (Plaintiff's Ex. 7).

[6] CMCC was aware of the suit earlier. Its account notes for Peggy Vaughan dated July 8, 2014 indicate that someone from CMCC spoke with attorney Margaret Manuel regarding the need to release the garnishment on Plaintiff. (Plaintiff's Ex. 6).

-5-

CMCC the following day, pointing out the spelling error and lack of a social security number on the writ of garnishment, and promised to refund the $666.26 to Plaintiff.[7] (Plaintiff's Ex. 8). Plaintiff testified that she received a full refund sometime in August 2014.[8]

On November 13, 2014, Plaintiff's counsel Anthony Bush ("Bush") emailed CMCC's counsel at the time, Margaret Manuel ("Manuel"), several interrogatories and requests for production; Manuel forwarded Bush's discovery requests to CMCC the same day.[9] (Plaintiff's Ex. 13; Doc. 32). CMCC had 30 days, or until December 13, 2014, to respond. *See* FED. R. CIV. P. 33(b)(2) and 34(b)(2)(A), as incorporated by FED. R. BANKR. P. 7033 and 7034. CMCC apparently faxed Manuel some documents on November 21, 2014 that Manuel either ignored or did not receive. (Defendant's Ex. 12). However, the date "11/21/14" is written over white-out on the fax cover page, and even taking the evidence at face value the documents CMCC sent were non-responsive; none of the interrogatories were answered and none of the documents were designated as answering any specific request for production. (Defendant's Ex. 12).

There is no evidence of any follow-up communication between CMCC and Manuel until December 18, 2014, when Manuel emailed CMCC requesting an update and noting that

---

[7] CMCC never received the $666.26 from its garnishment of Plaintiff. Based on the evidence, it appears that ADP still had possession of the garnished funds at the time of CMCC's July 2014 letter.

[8] There is no other evidence of the exact date Plaintiff received the refund. The Court accepts Plaintiff's testimony as credible.

[9] CMCC repeatedly objected to introduction of this evidence, both during litigation and at trial, on the grounds of attorney-client privilege. As discussed below, CMCC waived its privilege. *Infra* Part II(C)(3)(b). CMCC has taken an appeal of the Court's ruling on this matter that is still pending. *See* 3:15-cv-579-MHT (M.D. Ala. Sept. 3, 2015).

discovery responses were overdue.[10]  (Plaintiff's Ex. 13).  On December 23, 2014, Manuel wrote

Borne a letter indicating her intention to withdraw from representation of CMCC, citing

"irreconcilable differences in opinion and approach regarding the defense" as well as "a lack of

participation from [Borne's] end."[11]  (Defendant's Ex. 13).  Manuel also warned Borne that

CMCC's discovery responses were overdue and that the Court had set a discovery deadline of

December 31, 2014, and indicated that she intended to ask the Court for permission to withdraw

"on or about January 20, 2015. . . ."  (Defendant's Ex. 13).

Manuel filed her motion to withdraw with the Court on January 6, 2015, and the Court

held a hearing on January 13, 2015.  (Docs. 13 and 14).  At that hearing Manuel cited

communication difficulty with CMCC and the Court granted her motion to withdraw.  Bush

informed the Court that CMCC had not responded to his discovery requests and that the deadline

had passed.  Acting *sua sponte*, the Court entered default against CMCC over Manuel's

objection, scheduled an evidentiary hearing for January 27, 2015 to determine damages, and

instructed Manuel to inform CMCC of the default and the January 27 hearing.

Meanwhile, Borne contacted CMCC's current counsel, Joseph E. Watson, III ("Watson"),

on December 31, 2014 about representing CMCC.  (Plaintiff's Ex. 12).  Watson was out of town

and did not respond until January 8, 2015, and CMCC did not properly retain Watson until

---

[10]  Borne stated in his affidavit that he spoke with Manuel on December 13, 2014 about
her withdrawing from the case and asked her for a referral to a new attorney.  (Plaintiff's Ex. 12).
There is no written record that substantiates this claim.

[11]  Borne testified at trial that when he spoke with Manuel about her withdrawal she gave
no reason other than her pregnancy.  The Court does not find Borne's testimony credible in light
of Manuel's letter, and notes that Manuel ably tried a separate case before the Court in January
2015.

Case 14-08010   Doc 100   Filed 12/02/15   Entered 12/02/15 16:24:15   Desc Main
Document    Page 7 of 22

January 27, 2015. Watson did not attend the January 27 evidentiary hearing, and CMCC did not move to continue the hearing or give the Court any indication that it intended to defend the suit. The Court heard undisputed testimony from Plaintiff and awarded her a default judgment of $50,000 actual damages, $150,000 punitive damages, and $3,740 in attorneys' fees against CMCC. (Doc. 20).

CMCC, through Watson, moved to vacate the default judgment on February 10, 2015, citing holidays, vacations, "the headache of corporate bureaucracy[,]" and lack of timely notice of the January 27 hearing.[12] (Docs. 23 and 24). At the hearing on CMCC's motion on March 10, 2015, CMCC represented that it had timely faxed Manuel the required discovery responses and blamed Manuel for its failure to respond. (Doc. 62). CMCC also asserted that Manuel did not inform it of either the default or the January 27 evidentiary hearing. Based on CMCC's representations, and over Plaintiff's objection, the Court vacated its default judgment order but indicated it would look into the matter further. (Docs. 36 and 62). The Court also ordered CMCC to respond to Plaintiff's discovery requests and denied CMCC's motion to extend the deadline to conduct its own discovery, and warned that further obstruction by CMCC would be met with sanctions or reinstatement of the default judgment. (Doc. 36).

The parties proceeded to engage in protracted discovery squabbles stemming from Plaintiff's attempts to depose Manuel about the events leading up to the entry of default, Plaintiff's interrogatories and requests for admissions and production of documents pertaining to

---

[12] CMCC incorrectly asserted Rule 55(c), as incorporated by FED. R. BANKR. P. 7055, as the basis to set aside the default. Rule 55(c) applies to an entry of default, not a default judgment. The Court considered CMCC's motion under the more rigorous Rule 60(b) standard for vacating final judgment. *See* FED. R. CIV. P. 60(b)(1) and (6), as incorporated by FED. R. BANKR. P. 9024.

-8-

the default, and CMCC's objections on the basis of attorney-client privilege.[13] (Docs. 33, 34, 39, 40, 41, 42, 45, 46, 52, 53, 54, 57, 58, and 59). On July 23, 2015, the Court ordered CMCC to comply with Plaintiff's discovery requests and imposed sanctions in the form of Plaintiff's costs and attorney's fees, jointly and severally, on CMCC and Watson. (Doc. 64). CMCC and Watson have appealed the Court's July 23 Order, 3:15-cv-579-MHT, and Plaintiff's submission of attorney's fees and costs is still pending. (Doc. 70).

At trial on November 16, 2015, Plaintiff testified that she was humiliated at work by the garnishment. She also testified that she had been diagnosed with anxiety roughly 10 years ago, but that she had not recently seen a doctor about that condition. Plaintiff also testified that she had been forced to cancel a planned family trip to the Atlanta aquarium because of the garnishment and was forced to have to explain to her children what bankruptcy was and that she was in bankruptcy. She testified that she was unable to purchase her son's high school senior pictures, and that her father's furniture and vehicle were repossessed because she was unable to help him make the payments.[14] Plaintiff is the only breadwinner in a household of seven, which consists of herself, her four children, and her parents. She testified that she takes home $124 per month from Auburn City Schools. At the time of the garnishment she made $12.75 per hour while working roughly 30 hours per week for First Student; among the garnished paychecks, her

---

[13] CMCC also argued that this evidence was irrelevant to the underlying facts of the case and that it was moot because the time had passed for Plaintiff to appeal the Court's vacatur of the default judgment. (Doc. 59). The Court rejected these arguments together with CMCC's privilege argument. *Infra* note 18.

[14] On cross-examination, Plaintiff testified that she was not legally responsible for the furniture and vehicle.

highest take-home pay before deducting for the garnishment was $885 for two weeks of work, and the other paychecks were considerably lower.  (Plaintiff's Ex. 2).

## II.  ANALYSIS

This is a matter arising under the Bankruptcy Code over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the District Court's General Order of Reference dated April 25, 1985.  *See also* Continental Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 (11th Cir. 1999) ("'Arising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code.").  This is a core proceeding.  *See* 28 U.S.C. § 157(b)(2)(A).  This is a final order.

### A.  CMCC Willfully Violated the Automatic Stay

The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3).  In Chapter 13 bankruptcy, "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted" are property of the estate.  11 U.S.C. § 1306(a)(2). There is no dispute that the paychecks garnished by CMCC were property of Plaintiff's bankruptcy estate, and that the automatic stay was in effect.

"[A]n individual injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).  Violations of the automatic stay are willful "if the violator (1) knew of the automatic stay and (2) intentionally committed the

-10-

violative act, regardless of whether the violator specifically intended to violate the stay." Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1555 (11th Cir. 1996).  The Plaintiff has the burden of proving the violation, willfulness, and injury by a preponderance of the evidence. Grine v. Chambers (In re Grine), 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010).

**1. CMCC Demonstrated the Requisite Intent**

CMCC argues that it did not intend to violate the automatic stay, but intent to violate the stay is not necessary for § 362(k) liability.  CMCC only needed to intend to commit the act that violated the automatic stay, which in this case was the garnishment.  CMCC has argued that it intended to garnish Peggy Vaughan, not Plaintiff, and that the fault for the spelling error lies with the Mississippi court.  Even assuming that to be true, CMCC failed to take adequate steps to ensure that it garnished the correct person.  First, the face of the complaint CMCC filed with the Mississippi court contained two different spellings of Peggy Vaughan's last name.  Second, CMCC failed to take effective measures to correct the misspelling on the default judgment. Borne testified that he called the Mississippi court to correct the misspelling, but the Court does not credit his testimony;[15] in any event, CMCC would have needed to file a motion to alter or amend with the Mississippi court to correct the misspelling, and did not do so.  See Parker v. Credit Cent. South, Inc., 2015 WL 1042793, *2 n.3 (M.D. Ala. Mar. 10, 2015) ("A non-attorney calling court clerks is a non-action legally.  Even in small claims court, it takes a piece of paper – a pleading or motion or even a letter – to brake litigation momentum, a fact most attorneys

---

[15] CMCC subsequently garnished the correct Peggy Vaughan.  The answer of the garnishee form sent by the Mississippi court that was returned by First Student on July 15, 2014 still misspelled Peggy Vaughan's last name.

know."), *appeal docketed sub nom.* <u>Credit Cent. South, Inc. v. Parker</u>, No. 15-11204 (11th Cir. Mar. 23, 2015).

Third, and most importantly, CMCC perpetuated the spelling error on its handwritten suggestion of garnishment, and failed to include other indicators of identity such as the last four digits of Peggy Vaughan's social security number or her Mississippi address. There was no way First Student could have known from the information provided in the garnishment order that it placed the garnishment on the wrong person. CMCC was the only actor in this charade that was in a position to correct the error at the time it requested the garnishment. CMCC was aware (or should have been aware) of the potential for mischief from filing a suggestion of garnishment with incorrect and incomplete information, yet did so anyway. Therefore, it intentionally committed the act that violated the automatic stay. *See* <u>Jove Eng'g</u>, 92 F.3d at 1555.

## 2. CMCC Had Notice of Plaintiff's Bankruptcy in March 2014

A violation of the automatic stay is not willful within the meaning of § 362(k)(1) unless the violator also had notice of the bankruptcy. <u>Id.</u> CMCC asserts it had no notice Plaintiff was in bankruptcy until Esco called CMCC on April 17, 2014; however, the Court finds that CMCC had notice as early as March 26, 2014, when Plaintiff called CMCC and tried to explain that she was in bankruptcy and did not owe a debt to CMCC. *See* <u>Parker</u>, 2015 WL 1042793 at *8 (holding that a debtor's oral notification of his bankruptcy was sufficient notice to trigger § 362(k) liability). CMCC has no records of this conversation because it does not keep records of communications with people who are not in its computer system. Apparently, CMCC also lacks an effective means of ascertaining whether someone is in bankruptcy when a person calls and

informs CMCC of that. That represents a flaw in CMCC's internal procedures, not lack of notice, and does not provide CMCC with a basis to shirk the responsibilities incumbent upon receiving a bankruptcy notice. *See* <u>Sanders v. Community Cars, Inc. (In re Sanders)</u>, 2014 WL 2800813, *3 (Bankr. M.D. Ala. Jan. 3, 2014) (holding that creditor's flawed mail receipt procedures were insufficient to rebut a presumption of notice). The stay violation became willful when Plaintiff called and informed CMCC of her bankruptcy on March 26, 2014, yet CMCC took no affirmative action to stop the offending garnishment.

## B. The Court Will Not Reinstate its Default Judgment

At the end of the trial, Plaintiff asked the Court to reinstate the default judgment it entered on January 29, 2015. (Doc. 20). The Court declines to do so for two reasons. First, CMCC may not have understood the urgency to retain new counsel. The Court had scheduled trial for the week of April 27, 2015. (Doc. 8). While there may have been some slippage in communications between Manuel and CMCC, the shortness of time between the hearing on Manuel's motion to withdraw and the January 27 evidentiary hearing could have surprised CMCC. While CMCC's conduct fell far short of ideal, the sanction of judgment by default is a harsh one and should be used sparingly. Second, CMCC submitted new evidence that mitigated to some extent its culpability. *Infra* Part II(C)-(D). In light of the new evidence submitted at trial, the Court concludes that it would be unjust to reinstate its default judgment.

## C. Actual Damages

Where there is a willful violation of the automatic stay, § 362(k)(1) mandates an award of actual damages if the Plaintiff has established "a sufficient factual foundation." <u>Grine</u>, 439 B.R.

at 468. Actual damages must be proven by the Plaintiff "with reasonable certainty and must not be speculative or based on conjecture." Id. at 469 (citing Archer v. Macomb Cnty. Bank (In re Archer), 853 F.2d 497, 499-500 (6th Cir. 1988)). At trial, Plaintiff requested $5,000 in actual damages, exclusive of attorneys' fees.

### 1. Plaintiff Has Not Proven Emotional Distress

Damages for emotional distress "fall within the broad term of 'actual damages' in § 362(k)." Lodge v. Kondaur Capital Corp. (In re Lodge), 750 F.3d 1263, 1271 (11th Cir. 2014). However, to recover damages for emotional distress under § 362(k), "a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay." Id.

Plaintiff testified that she was humiliated at work by the garnishment, that she had been forced to explain to her children that she was in bankruptcy, and that she had previously been diagnosed with anxiety but was not seeing a doctor about it. *Supra*, Part I(C). While the Court is sympathetic to Plaintiff's predicament, she has not made a sufficient showing to satisfy the standard set out in Lodge. Even assuming the emotional distress Plaintiff suffered was "significant," she has not "clearly established" her injury with anything besides her own general testimony, nor demonstrated a sufficient causal connection to CMCC's stay violation. Absent these showings, the Court cannot award Plaintiff damages for emotional distress.

-14-

## 2. Plaintiff Was Injured by the Lost Use of the Garnished Monies

Emotional distress aside, Plaintiff has established that she suffered actual damages as a result of CMCC's unlawful garnishment. Plaintiff was wrongfully deprived of the use of $666.26 for roughly two months and of smaller amounts for up to four months.[16] *Supra* Part I(B). Such a deprivation of income might not be significant to a person of means, but it can be devastating to a Chapter 13 debtor of modest means who is obligated to make plan payments. Plaintiff was forced to cancel a planned trip with her children to the Atlanta aquarium because of CMCC's garnishment, and was unable to purchase her eldest child's high school senior pictures. These are compensable injuries directly caused by CMCC's garnishment.[17] *See also* Putnam v. Rymes Heating Oils, Inc. (In re Putnam), 167 B.R. 737, 741 (Bankr. D.N.H. 1994) (holding that a debtor had suffered actual damages as a result of the defendant's failure to return a repossessed propane tank (and its contents) for two days). The Court finds that Plaintiff suffered $1,500 in actual damages as a result of the temporary lost use of the garnished monies.

## 3. Costs and Attorneys' Fees

Costs and attorney's fees that a plaintiff incurs as a result of an automatic stay violation are also "actual damages" under § 362(k) when they are necessary to stop an ongoing stay

---

[16] CMCC's argument that it never received the garnished monies is irrelevant because Plaintiff was injured by the withholdings; her injury would be the same regardless of whether the money was sent to CMCC or remained in ADP's possession.

[17] The Court finds that Plaintiff did not suffer actual damages due to the repossession of her father's furniture and vehicle, despite Plaintiff's loss of the use of those items, because only Plaintiff's father was legally obligated on the notes for them. The items were repossessed because Plaintiff's father failed to meet his legal obligations on these notes, so the link between CMCC's garnishment and Plaintiff's lost use of the items is too indirect to establish causation.

violation, undo the effects of a stay violation, or recover pre-litigation actual damages. Parker, 2015 WL 1042793 at *6 (citing Hutchings v. Ocwen Fed. Bank (In re Hutchings), 348 B.R. 847, 917 (Bankr. N.D. Ala. 2006)); *see also* Duby v. United States (In re Duby), 451 B.R. 664, 674 (1st Cir. B.A.P. 2011) (holding that an adversary proceeding was necessary, even though the stay violation had already ended, because the debtor had suffered unredressed damages). In this case, it was necessary for Plaintiff to file her adversary proceeding in order to accomplish all three objectives.

### a.  Plaintiff Attempted to Mitigate Damages

To recover costs and attorney's fees for a violation of an automatic stay, a plaintiff generally must first attempt to mitigate damages by communicating directly with the violator. In re Briskey, 258 B.R. 473, 480 (Bankr. M.D. Ala. 2001). Here, Plaintiff directly called CMCC as soon as she received notice of the garnishment, and Esco called CMCC on her behalf before the withholdings occurred. CMCC heeded neither warning, though it had the duty at that point to "take all necessary steps to restore [Plaintiff] to the position [s]he would have been in had the automatic stay been properly observed." Id.; *see also* Parker, 2015 WL 1042793 at *8. Instead, Plaintiff was forced to sue CMCC to spur it into action, by which point the withholdings had occurred and Plaintiff's injuries had been sustained.

### b.  CMCC Aggravated Plaintiff's Attorneys' Fees With Its Dilatory Litigation Conduct

CMCC's stay violation ended in August 2014 when the garnished funds were returned to Plaintiff. However, § 362(k) does not limit an award of attorney's fees to the point at which the stay violation ended if the adversary proceeding was properly commenced in the first place.

-16-

America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard), 803 F.3d 1095, 1099 (9th Cir. 2015) (en banc) (overruling Sternberg v. Johnston, 595 F.3d 937 (9th Cir. 2010)); Duby, 451 B.R. 675-77; Parker v. Credit Cent. South, Inc. (In re Parker), 515 B.R. 337, 340-47 (Bankr. M.D. Ala. 2014), aff'd 2015 WL 1042793 (M.D. Ala. Mar. 10, 2015); Grine, 439 B.R. at 470-71. If § 362(k) awards attorney's fees necessary to bring a stay violation suit to fruition, it necessarily includes attorney's fees incurred because of the violator's conduct during that suit. Parker, 515 B.R. at 347-48.

In Parker, the violator exacerbated the debtor's attorney's fees by denying readily ascertainable and otherwise undisputed facts, and by engaging in "scorched earth" discovery tactics. Id. at 347-48, 352. CMCC engaged in similar tactics in this case. First, it failed to timely respond to Plaintiff's discovery requests or communicate with Manuel, causing the Court to enter default against it. Second, CMCC moved ponderously to engage new counsel after the entry of default and did not appear at the January 27 evidentiary hearing, causing the Court to enter default judgment against it.

Third, at the hearing on CMCC's motion to vacate the default judgment CMCC blamed its default on Manuel, then improperly invoked attorney-client privilege when Plaintiff sought to discover evidence pertaining to CMCC's default.[18] "The attorney-client privilege belongs solely to the client, and the client may waive it, either expressly or by implication." Cox v. Adm'r U.S.

_____

[18] CMCC also asserted that the issue was moot because Plaintiff had failed to timely appeal the Court's vacatur of its default judgment under FED. R. BANKR. P. 8002, ignoring the fact that the Court's vacatur order was a non-appealable interlocutory order. *See* 28 U.S.C. § 158(a). CMCC further asserted that its communications with Manuel were irrelevant under FED. R. CIV. P. 26(b)(1) (as incorporated by FED. R. BANKR. P. 7026). That is clearly not the case, since CMCC's litigation conduct exacerbated Plaintiff's actual damages.

<u>Steel & Carnegie</u>, 17 F.3d 1386, 1417 (11th Cir. 1994) (internal quotation marks omitted).  A

client impliedly waives the attorney-client privilege "if it injects into the case an issue that in

fairness requires an examination of otherwise protected communications."  <u>Id.</u> at 1419.  "To

waive the attorney client privilege by voluntarily injecting an issue in the case, a defendant must

do more than merely deny a plaintiff's allegations.  The holder must inject a new factual or legal

issue into the case."  <u>Carpenter v. Mowhawk Indus., Inc.</u>, 2007 WL 5971741, *8 (N.D. Ga. Oct.

1, 2007).  CMCC placed Manuel's representation at issue when it blamed her for its default, and

the Court relied on CMCC's representations when it vacated the default judgment.  By raising

the adequacy of Manuel's representation as a new issue in the case, CMCC impliedly waived its

privilege over its communications with her.  CMCC's obstinance in this matter forced Plaintiff to

file a motion to compel, and the Court has already awarded Plaintiff her attorneys' fees as to this

issue.

### D.  Punitive Damages

In addition to actual damages, § 362(k)(1) also permits an award of punitive damages in

"appropriate circumstances."  <u>Hutchings</u>, 348 B.R. at 913.  "'Appropriate circumstances' has

been interpreted to require that the violator's acts be egregious, vindictive, malicious, or

accompanied by bad faith."  <u>Id.</u> (citing <u>Orysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In</u>

<u>re Crysen/Montenay Energy Co.)</u>, 902 F.2d 1098, 1105 (2d Cir. 1990); <u>United States v. Ketelsen</u>

<u>(In re Ketelsen)</u>, 880 F.2d 990, 993 (8th Cir. 1989)).  "Five factors guide bankruptcy courts in

determining whether an award of punitive damages is proper: '(1) the nature of the defendant's

conduct; (2) the nature and extent of the harm to the plaintiff; (3) the defendant's ability to pay;

-18-

(4) the motives of the defendant; and (5) any provocation by the debtor.'" <u>Parker</u>, 2015 WL

1042793 at *9 (quoting <u>Castillo v. Three Aces Auto Sales (In re Castillo)</u>, 456 B.R. 719, 727

(Bankr. N.D. Ga. 2011)) (internal brackets omitted).  Plaintiff requested $50,000 in punitive

damages at trial.

The circumstances of this case are appropriate for punitive damages.  CMCC had no

malicious intent when it requested the garnishment because it did not intend to garnish Plaintiff,

though it arguably acted recklessly by requesting a garnishment with inaccurate and incomplete

information.  However, the real egregiousness of CMCC's conduct lies not in its actions, but in

its inaction.  CMCC was aware as early as March 26, 2014 that it was garnishing a bankruptcy

debtor, yet did nothing.  CMCC was warned again on April 17, 2014 by Plaintiff's counsel, yet

did nothing.  Even after it was sued, CMCC took more than a month to end the stay violation, to

the detriment of Plaintiff.  CMCC's slothfulness in this regard is particularly egregious in light of

the fact that CMCC knew Plaintiff did not even owe it a debt.

The Court is aware that Borne and CMCC's other collection staff are not attorneys and

may not have understood the consequences of their actions (and inaction), but that does not

excuse CMCC's responsibilities when it uses inadequately trained staff to act on its behalf in a

legal capacity.  <u>Parker</u>, 2015 WL 1042793 at *10.  When it garnished a Chapter 13 bankruptcy

debtor, CMCC incurred an affirmative duty to act with the utmost haste to undo the garnishment.

<u>Briskey</u>, 258 B.R. at 480.  That duty was even more imperative in this instance because there was

no underlying debt on which to base CMCC's garnishment of Plaintiff.  CMCC's garnishment

was unlawful both within the bankruptcy context and outside of it. Plaintiff would have had a tort claim against CMCC even if she were not in bankruptcy.

Thus, CMCC's conduct was egregious in several aspects: it acted recklessly when it sought the garnishment, it garnished someone who did not owe it a debt, it garnished someone who was in Chapter 13 bankruptcy, and, worst of all, it knew these things yet failed to take remedial action for almost five months. CMCC's conduct harmed Plaintiff by jeopardizing her bankruptcy case and depriving her of the use of her money. The Court presumes that CMCC, as a collection entity that has litigated this case heavily since the default judgment was vacated, has the ability to pay a punitive damages award. The Court also presumes that CMCC's motive in using non-attorneys to prosecute its collection suits and garnish its debtors is to keep its legal costs down at the risk of violating laws such as the automatic stay; that is another factor that supports an award of punitive damages. Parker, 2015 WL 1042793 at *10. Finally, there was no provocation (or even a debt owed) by Plaintiff.

The most important function to be served by an award of punitive damages is deterrence of such conduct in the future. CMCC's conduct here was deplorable. It used untrained and incompetent non-professionals to represent it in court. Once the garnishment error was brought to its attention, it failed to take action to remedy the harm it had caused. Money judgments and garnishment orders are strong medicine that, in the wrong hands, can easily harm innocent people. Based upon its observation of CMCC's conduct in this case and the demeanor of its representative at trial, the Court is certain that a simple admonishment not to cause such harm in

the future would go unheeded. A significant award of punitive damages is necessary to deter CMCC from such conduct in the future.

Parker provides a useful comparison to this case. In Parker, the violator used an inadequately trained non-attorney to sue the debtor in small claims court to collect a $1,200 debt. Id. at *1. The debtor filed Chapter 13 bankruptcy and orally informed the violator he had done so; rather than move to stay or dismiss the state court proceeding, the violator allowed the debtor to be served with process and allowed default judgment to be entered against him two months later. Id. at *2. The debtor did not suffer any direct injury, but was forced to file an adversary proceeding to stop the stay violation. Id. The district court affirmed this Court's award of $10,000 in punitive damages in Parker. Id. at *11.

The egregiousness of CMCC's conduct in this case far outdistances the Parker violator's conduct both in length and severity, and Plaintiff suffered direct injury in this case. In light of the foregoing, the Court concludes that an award of $50,000 in punitive damages is warranted.[19]

---

[19] The Court is aware that such an award represents in excess of a 30 to 1 ratio over the actual damages Plaintiff suffered from the lost use of her money, but Plaintiff has also been forced to incur substantial attorneys' fees to prosecute this suit. Attorneys' fees qualify as "actual damages" under § 362(k), so "an award of punitive damages made in connection with an award of compensatory damages in the form of attorneys' fees, but without any other actual damages, is not erroneous." Parker, 2015 WL 1042793 at *10 (internal quotation marks omitted). At trial Plaintiff claimed roughly $32,000 in attorneys' fees, and while the Court might not ultimately award that amount, infra Part III, it is satisfied that its award of punitive damages is not excessive.

### III. CONCLUSION

CMCC violated the automatic stay when it garnished Plaintiff, and that violation became willful when Plaintiff notified CMCC of her bankruptcy. CMCC failed to take adequate steps to rectify its violation for almost five months after it learned of the bankruptcy, causing injury to Plaintiff. For that, Plaintiff is awarded actual damages of $1,500 plus attorneys' fees to be determined later, as well as $50,000 in punitive damages.

The Court will enter a separate order consistent with this opinion.

Done this 2nd day of December, 2015.

_____

United States Bankruptcy Judge

c: Anthony B. Bush, Attorney for Plaintiff

   Paul D. Esco, Attorney for Plaintiff

   Joseph E. Watson III, Attorney for Defendant