## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 10-81836-WRS |
| | Chapter 13 |
| PEGGY ANN VAUGHN, | |
| Debtor | |
| PEGGY ANN VAUGHN, | |
| Plaintiff | Adv. Pro. No. 14-8010-WRS |
| v. | |
| CENTRAL MISSISSIPPI CREDIT CORPORATION, | |
| Defendant | |

### MEMORANDUM DECISION

This adversary proceeding is before the Court on the Motion for Award of Attorneys' Fees and Expenses filed by Plaintiff Peggy Ann Vaughn, the Response in Opposition filed by Defendant Central Mississippi Credit Corporation, and the Plaintiff's Motion for Leave to File Reply. (Docs. 114, 123, & 125). Plaintiff's Motion for Leave to File Reply is GRANTED. Plaintiff's Motion for Award of Attorneys' Fees and Expenses is GRANTED IN PART.

### I.  FACTS & PROCEDURAL HISTORY

#### A.  Litigation History[1]

On June 30, 2014, Plaintiff Peggy Ann Vaughn ("Vaughn") filed a complaint against Defendant Central Mississippi Credit Corporation ("CMCC") for willful violation of the

---

[1] Except as otherwise indicated, the litigation history is taken from the Court's trial decision. *See* <u>Vaughn v. Cent. Miss. Credit Corp. (In re Vaughn)</u>, 542 B.R. 589 (Bankr. M.D. Ala. 2015) (trial decision) (Doc. 100).

automatic stay in her Chapter 13 bankruptcy, alleging that CMCC wrongfully garnished her for a debt she did not owe. On January 6, 2015, CMCC's former counsel moved to withdraw from representation, citing communication difficulties with CMCC; the Court granted her motion at a hearing on January 13, 2015. At that same hearing, Vaughn's counsel informed the Court that CMCC had not responded to his discovery requests and that they were overdue. The Court entered default *sua sponte* against CMCC and held an evidentiary hearing on January 27, 2015, at which CMCC failed to appear. The Court awarded Vaughn actual damages of $50,000, punitive damages of $150,000, and attorneys' fees and costs of $3,740. CMCC retained new counsel and moved to vacate the default judgment on February 10, 2015; CMCC blamed its former counsel for its default. The Court granted CMCC's motion to vacate the default judgment on March 10, 2015, but ordered CMCC to answer Vaughn's discovery requests and extended the deadline for Vaughn to conduct further discovery.[2]

The parties engaged in a lengthy discovery dispute revolving primarily around Vaughn's attempts to depose CMCC's former counsel regarding the events leading up to the entry of default, and CMCC's objections on the basis of attorney-client privilege. On June 3, 2015,

---

[2] The original discovery deadline was December 31, 2014. The Court did not extend the discovery deadline for CMCC because it could not show it had been diligent during the original discovery period.

Vaughn filed a motion to compel,[3] and CMCC responded five days later with a motion for protective order. (Docs. 58 & 59). On July 23, 2015, the Court granted Vaughn's motion to compel, denied CMCC's motion for protective order, and imposed sanctions against CMCC and its counsel, jointly and severally ("Sanctions Order").[4] (Doc. 64). The Court later determined that Vaughn incurred an additional 10.4 hours of attorney work at a rate of $325 per hour due to CMCC's recalcitrance regarding discovery, and awarded Vaughn $3,380 in attorneys' fees pursuant to the Sanctions Order ("Award of Sanctions").[5] (Doc. 99).

After a four-hour trial on November 16, 2015, at which it heard testimony from Vaughn and from CMCC's representative, the Court found that CMCC willfully violated the automatic stay in Vaughn's bankruptcy case. The Court awarded Vaughn $1,500 in actual damages

---

[3] Vaughn did not frame her motion as one to compel, but the Court treated it as such because of the parties' prior filings and the Court's prior Order dated April 2, 2015. (Doc. 49). In that Order, the Court "note[d] that [CMCC] has injected the issue of what actions were taken by [CMCC's former counsel] in support of its motion to vacate the default judgment" and rejected CMCC's blanket assertion of privilege over its former counsel's communications. (Doc. 49). Nevertheless, the exhibits attached to Vaughn's motion clearly demonstrated that CMCC persisted in objecting to discovery on the basis of privilege, and the purpose of Vaughn's motion was to ask the Court to require CMCC to respond to its discovery requests. (Doc. 58).

[4] CMCC has filed an interlocutory appeal of the Sanctions Order that is pending in district court. See Cent. Miss. Credit Corp. v. Vaughn, 3:15-cv-00579-MHT (M.D. Ala. Aug. 6, 2015).

[5] The Award of Sanctions is facially inconsistent. It states it is awarding $3,380, but in the very next sentence orders CMCC and its counsel to pay $3,120. (Doc. 99). In their subsequent filings the parties appear to agree that the Award of Sanctions was in the higher amount of $3,380. (Docs. 123 & 125).

(exclusive of attorneys' fees and costs) for the lost use of the garnished funds, $50,000 in punitive damages, and attorneys' fees and costs to be determined.[6]

### B. Vaughn's Motion for Attorneys' Fees and Costs

Vaughn filed the instant motion for attorneys' fees and expenses on January 1, 2016. (Doc. 114). She asserts that she incurred 90.75 hours of attorney work at $325 per hour as a result of CMCC's stay violation and the subsequent adversary proceeding, plus $6.49 in costs, for a total of $29,500.24. (Doc. 114). Her motion is supported by a chronological itemization of work performed by her counsel. (Doc. 114).

CMCC opposes Vaughn's motion for attorneys' fees on four grounds. (Doc. 123). First, CMCC argues that $325 per hour is not reasonable for work performed by Vaughn's counsel.[7] Second, CMCC made an offer of judgment on March 26, 2015 that Vaughn rejected, and that CMCC contends is more favorable than the judgment Vaughn ultimately received as to actual damages (excluding attorneys' fees and costs). CMCC served Vaughn with the following offer of judgment:

> CMCC will allow Peggy Vaughn to enter judgment against it,
> CMCC shall be fully completely and [sic] released by Peggy
> Vaughan [sic] from any and all further claims. [sic] and CMCC
> shall pay to Peggy Vaughn the following sum:

---

[6] CMCC has filed an appeal of the Court's judgment that is pending in district court. *See* Vaughn v. Cent. Miss. Credit Corp. (In re Vaughn), 542 B.R. 589 (Bankr. M.D. Ala. 2015), *appeal docketed sub nom.* Cent. Miss. Credit Corp. v. Vaughn, 3:15-cv-00932-WKW (M.D. Ala. Dec. 17, 2015). This is a separate appeal from CMCC's interlocutory appeal of the Court's Sanctions Order. *Supra* note 4.

[7] CMCC previously objected to this rate when Vaughn moved for reimbursement of attorneys' fees in response to the Sanctions Order. (Docs. 70 & 76). The Court rejected CMCC's argument in the Award of Sanctions, but will address it more fully in this Decision. *Infra* Part II(D).

> 1. ONE THOUSAND NINE HUNDRED SEVENTY DOLLARS ($1,970.00) in actual damages to Peggy Vaughn, as provided by 11 U.S.C. § 362(k);
> 2. FIVE THOUSAND NINE HUNDRED TEN DOLLARS ($5,910.00) in punitive damages, as provided by 11 U.S.C. § 362(k); and
> 3. Peggy Vaughn's costs and attorneys [sic] fees accrued as of today's date, as provided by 11 U.S.C. § 362(k), as determined by the Court[.]

(Doc. 123, Ex. 1).

Vaughn incurred 21.2 hours of attorney work prior to receiving CMCC's offer of judgment. (Doc. 123). CMCC argues that Vaughn is not permitted to recover for any costs or attorneys' fees incurred after that date. (Doc. 123). Moreover, CMCC claims that Vaughn's *pre-offer* attorneys' fees incurred should be reduced by one-fourth because its offer of actual damages comprised one-fourth of its total offer of judgment. (Doc. 123). CMCC further asserts that it should be allowed to offset its own post-offer attorney's fees and costs of $11,850.99 against Vaughn's judgment. (Doc. 123). The net effect of CMCC's argument would be to completely deny Vaughn any award of attorneys' fees or expenses and to reduce her judgment by $6,683.49.[8] (Doc. 123).

Alternatively, CMCC opposes Vaughn's motion for attorneys' fees on two other grounds. First, CMCC argues that Vaughn should not be allowed to recover attorneys' fees for certain entries totaling 4.85 hours dated between April 1 and May 13, 2015. (Doc. 123). CMCC claims that Vaughn failed to disclose these entries when she filed her prior motion for attorneys' fees (Doc. 70) and that she should not be permitted to recover for them now. (Doc. 123). Second,

---

[8] In reaching this figure, CMCC asserts that it should be entitled to receive $325 per hour for work performed by its own counsel, and assumes that the Court would have allowed Vaughn to recover $325 per hour for her counsel's work as well.

CMCC alleges that Vaughn's motion double-counted the $3,380 from the Award of Sanctions. (Doc. 123).

Vaughn filed a motion for leave to file a reply and attached her proposed reply as an exhibit. (Doc. 125). In her reply, Vaughn concedes that the $3,380 Award of Sanctions was double-counted and discloses a 0.5-hour discrepancy that was raised by the Bankruptcy Administrator.[9] (Doc. 125, Ex. 1). She disputes CMCC's remaining arguments in opposition to her application for attorneys' fees. (Doc. 125, Ex. 1).

## II. ANALYSIS

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This is a final order.

### A. Attorneys' Fees as Actual Damages

A court's "'basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158, 2164 (2015) (quoting Hardt v. Reliance Stanford Life Ins. Co., 560 U.S. 242, 252-53 (2010) (internal quotation marks omitted)). Courts "have recognized departures from the American Rule only in 'specific and explicit provisions for the allowance of attorneys' fees under

---

[9] Because Vaughn concedes these reductions, the Court will apply them without further discussion.

selected statutes.'" Id. (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 260 (1975)).

One such departure is present in 11 U.S.C. § 362(k), which provides that "an individual injured by any willful violation of a stay provided by [§ 362(a)] shall recover actual damages, including costs and attorneys' fees. . . ." 11 U.S.C. § 362(k)(1). Attorneys' fees a debtor incurs as a result of filing an adversary proceeding qualify as actual damages under § 362(k) when they are necessary to stop an ongoing stay violation, undo the effects of a stay violation, or recover pre-litigation actual damages. Parker v. Credit Cent. South, Inc. (In re Parker), 2015 WL 1042793, *6 (M.D. Ala. Mar. 10, 2015) (Watkins, J.), aff'd --- Fed. Appx. ----, 2015 WL 9240495 *3-4 (11th Cir. Dec. 17, 2015) (per curiam)[10]; Duby v. United States (In re Duby), 451 B.R. 664, 674 (1st Cir. B.A.P. 2011); Hutchings v. Ocwen Fed. Bank (In re Hutchings), 348 B.R. 847, 917 (Bankr. N.D. Ala. 2006). In addition, a plaintiff generally cannot recover attorneys' fees under § 362(k) unless she has first attempted to mitigate damages by communicating directly with the violator. In re Briskey, 258 B.R. 473, 480 (Bankr. M.D. Ala. 2001).

The Court has already determined that Vaughn attempted to mitigate damages prior to filing suit, without success, and that her adversary proceeding was necessary to stop CMCC's ongoing violation of the automatic stay. Vaughn v. Cent. Miss. Credit Corp., 542 B.R. 589, 601 (Bankr. M.D. Ala. 2015). Therefore, she is entitled to recover attorneys' fees as actual damages under § 362(k). Moreover, the termination of CMCC's stay violation in August 2014 did not terminate Vaughn's ongoing right to recover attorneys' fees as she continued to incur them. *See*

---

[10] Because the Court will cite a different Parker case later in this Decision that was decided by Judge Thompson, *infra* Part II(D), the Court will refer to this Parker litigation as Credit Central South.

America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard), 803 F.3d 1095, 1099 (9th Cir. 2015) (en banc) (overruling Sternberg v. Johnston, 595 F.3d 937 (9th Cir. 2010)); Parker v. Credit Cent. South, Inc. (In re Parker), 515 B.R. 337, 340-47 (Bankr. M.D. Ala. 2014).[11]

### B. The Judgment Vaughn Obtained is More Favorable than CMCC's Offer of Judgment

CMCC asserts that under Rule 68(d) of the Federal Rules of Civil Procedure, Vaughn cannot recover her post-offer attorneys' fees and must offset CMCC's post-offer attorneys' fees against the judgment. (Doc. 123). Rule 68(d) provides that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." FED. R. CIV. P. 68(d), as incorporated by FED. R. BANKR. P. 7068.

"The language contained in Rule 68 is mandatory; [a] court does not have the discretion to rule otherwise." Jordan v. Time, Inc., 111 F.3d 102, 105 (11th Cir. 1997). "[A] party who rejects an offer, litigates, and does not get a better result must pay the other side's costs." Stein v. Buccaneers Ltd. P'ship, 772 F.3d 698, 702 (11th Cir. 2014). However, Rule 68(d) only applies to judgments in which the plaintiff is the prevailing party, not to judgments in which the defendant prevails. Delta Air Lines, Inc. v. August, 450 U.S. 346, 352 (1981). Courts interpret ambiguities in an offer of judgment against the defendant, and the defendant has the burden of proving that the judgment the plaintiff eventually receives "is not more favorable" than the offer. King v. Rivas, 555 F.3d 14, 19 (1st Cir. 2009); Reiter v. MTA New York City Transit Auth., 457

---

[11] *Supra* note 10.

F.3d 224, 231 (2d Cir. 2006); Danow v. Law Office of David E. Borack. P.A., 367 Fed. Appx. 22, 24 (11th Cir. 2010) (per curiam).

In determining whether Vaughn's eventual recovery is more favorable than the offer of judgment she rejected, the Court cannot consider her post-offer costs or attorneys' fees in the comparison. Marek v. Chesny, 473 U.S. 1, 7 (1985). However, the Court can consider Vaughn's pre-offer costs and attorneys' fees in determining the favorability of the judgment she obtained. Marryshow v. Flynn, 986 F.2d 689, 692 (4th Cir. 1993); Grosvenor v. Brienen, 801 F.2d 944, 946-48 (7th Cir. 1986); *see also* Marek, 473 U.S. at 7 ("A reasonable determination whether to accept the offer can be made by simply adding [the amount in damages caused plus the costs then accrued] and comparing the sum to the amount offered."). Also, the Court may consider any equitable relief provided as part of the judgment. Reiter, 457 F.3d at 231; Danow, 367 Fed. Appx. at 24.

For the cost-shifting mandate of Rule 68(d) to be triggered, the "judgment" the plaintiff "finally obtains" must be "not more favorable" than the offer of judgment she rejected. CMCC makes the novel argument that because the actual damages component of its offer was slightly higher than the actual damages Vaughn recovered ($1,970 versus $1,500), its offer of judgment was more favorable and triggers Rule 68(d) – even though the overall offer was much lower than Vaughn's overall recovery ($7,880 plus attorneys' fees and costs versus $51,500 plus attorneys' fees and costs). CMCC has provided no cases that expressly address its compartmentalized favorability argument.[12]

---

[12] CMCC relies on Marek and on this Court's attorney's fee opinion in Credit Central South for its Rule 68(d) argument. (Doc. 123). The offer of judgment in Marek was a non-compartmentalized lump-sum offer of $100,000 that exceeded the plaintiff's judgment of $5,000

9

In Danow, the plaintiff sued the defendant under the Fair Debt Collection Practices Act ("FDCPA"). Danow, 367 Fed. Appx. at 23; *see* 15 U.S.C. §§ 1692, *et seq*. The FDCPA provides for an award of "any actual damage" plus a statutory award of up to $1,000 and "the costs of the action, together with a reasonable attorney's fee. . . ." 15 U.S.C. § 1692k(a). The plaintiff in Danow rejected an offer of judgment for $3,000 total, consisting of $1,000 statutory/actual damages, $1,700 attorney's fees, and $300 costs; the offer also included a confidentiality requirement. Danow, 367 Fed. Appx. at 23. The plaintiff subsequently recovered $1,000 in statutory damages, plus $62,895 in attorney's fees and $715.60 in costs. Id. The defendant argued that Rule 68(d) shifted the post-offer attorney's fees and costs because the plaintiff's $1,000 statutory damages recovery did not exceed the offer's $1,000 statutory damages. Id. The Eleventh Circuit rejected the defendant's argument because the plaintiff's judgment lacked a confidentiality requirement, and the defendant could not prove that the judgment was "not more favorable" than its offer containing one.[13] Id. at 24.

Though not explicitly stated, the Danow panel rejected the defendant's attempt to isolate one component of its offer as a basis for comparison under Rule 68(d). The Second Circuit did the same regarding the plaintiff's eventual judgment in Reiter. In that case, the Title VII plaintiff rejected an offer of judgment for $20,001 without equitable relief, then recovered a judgment of

---

for wrongful death under state law, $52,000 for a violation of 42 U.S.C. § 1983, and $3,000 in punitive damages, plus $32,000 in pre-offer costs (for a $92,000 total judgment). Marek, 473 U.S. at 4. No offer of judgment was made in Credit Central South, and the Court's reference to Rule 68 and offers of judgment in that case is dicta. Credit Cent. South, 515 B.R. at 348. Therefore, neither case supports CMCC's position.

[13] The Danow panel apparently did not consider whether to include pre-offer attorney's fees and costs in calculating the plaintiff's final judgment.

10

$10,000 with reinstatement at his old job. Reiter, 457 F.3d at 226. The Second Circuit determined that the plaintiff's equitable relief should be considered as well as the money award and held that Rule 68 did not bar the plaintiff's recovery of his post-offer costs. Id. at 231-32.

The Court holds that favorability in Rule 68(d) is an all-or-nothing comparison between the entire judgment and the entire offer; *i.e.*, a judgment finally obtained is either more favorable than an offer of judgment or it is not. The text of Rule 68(d) amply supports this conclusion. Rule 68(d) triggers an all-or-nothing shift of post-offer costs, and it envisions a simple comparison between "the judgment" and "the unaccepted offer," not between "part of the judgment" and "the analogous part of the unaccepted offer." Cf. Knight v. Snap-On Tools Corp., 3 F.3d 1398, 1404 (10th Cir. 1993) (rejecting a defendant's "attempt to fractionalize the prevailing plaintiff inquiry" when the plaintiff prevailed on some of his claims but not others).[14] Courts would be overwhelmed if they were forced to parse through competing components of offers and judgments to determine whether, and to what extent, Rule 68(d) acts to shift or reduce costs.

This holding also supports Rule 68(d)'s purpose "to encourage settlement and avoid litigation." Marek, 473 U.S. at 5. As a practical matter, a defendant making an offer of judgment, and a plaintiff deciding whether to accept it, will only be considering what the total liability or total award will be, not what the relative amount of one component versus another component of the offer will be. However, CMCC's interpretation of Rule 68(d) would

---

[14] A "prevailing party" is generally defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources, 532 U.S. 598, 603 (2001). Thus, like favorability, the "prevailing party" inquiry is also an all-or-nothing concept.

11

encourage sham offers. In Credit Central South, for example, the plaintiff recovered no actual damages other than his attorney's fees and costs, but he recovered $10,000 in punitive damages.[15] Credit Cent. South, 2015 WL 1042793 at *4, *10. If the defendant in that case had made an offer of judgment for $1 in actual damages plus attorney's fees and costs, with no punitive damages, then under CMCC's interpretation Rule 68(d) would have been triggered in Credit Central South by a frivolous settlement offer. "If a plaintiff chooses to reject a reasonable offer, then it is fair that he not be allowed to shift the cost of continuing the litigation to the defendant in the event that his gamble produces an award that is less than or equal to the amount offered. But it is hardly fair or evenhanded to make the plaintiff's rejection of an utterly frivolous settlement offer a watershed event that transforms a prevailing defendant's right to costs in the discretion of the trial judge into an absolute right to recover the costs incurred after the offer was made." Delta Air Lines, 450 U.S. at 356.

CMCC's offer of judgment was for $7,880, plus pre-offer costs and attorneys' fees. (Doc. 123). The judgment Vaughn finally obtained, for purposes of a Rule 68(d) comparison, was for $51,500, plus pre-offer costs and attorneys' fees. Vaughn, 542 B.R. at 604; *accord* Marek, 473 U.S. at 7 (permitting consideration of pre-offer attorneys' fees and costs but not post-offer attorneys' fees and costs). As Vaughn's judgment is more favorable than CMCC's offer,

---

[15] This Court awarded the plaintiff in Credit Central South $2,000 for damages from emotional distress. Parker v. Credit Cent. South, Inc. (In re Parker), 2014 WL 2800754, *5 (Bankr. M.D. Ala. Feb. 11, 2014); *supra* note 10. That portion of the judgment was vacated by the district court in light of the Eleventh Circuit's intervening decision in Lodge v. Kondaur Capital Corp., and the plaintiff did not appeal the district court's vacatur or attempt to prove emotional distress damages on remand. Credit Central South, 2015 WL 1042793 at *4 (citing Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1271 (11th Cir. 2014)).

the Court rejects CMCC's reliance on its offer of judgment as a basis to limit Vaughn's recovery of attorneys' fees, or to offset CMCC's own attorney's fees and costs against her judgment.

### C. There are No Discrepancies Between Vaughn's Prior Motion for Attorneys' Fees and the Instant Motion for Attorneys' Fees

CMCC also claims that Vaughn listed certain entries in her current motion for attorneys' fees (Doc. 114) that are dated between April 1 and May 13, 2015, and that she failed to disclose in her prior motion for attorneys' fees (Doc. 70) that she filed in response to the Sanctions Order. (Doc. 123). The Court has carefully reviewed both motions and finds that CMCC's assertion is simply not true. On the contrary, the entries during the disputed period for the instant motion are identical to the entries for her prior motion; *i.e.*, there is no evidence that Vaughn's counsel was trying to hide the ball from the Court or from CMCC. (Docs. 70 & 114). CMCC's opposition to some of the entries is justifiable because they were previously awarded to Vaughn in the Award of Sanctions, *supra* note 9, but CMCC objected separately on that ground and its argument here appears to assert that the hours for these entries should be reduced *in addition* to the offset of the Award of Sanctions. (Doc. 123). CMCC's argument that certain billing entries were not previously disclosed is without merit.

### D. The Rate Charged by Vaughn's Counsel is Reasonable

In its opposition to Vaughn's prior motion for attorneys' fees, CMCC protested that the rate of $325 per hour requested by Vaughn's counsel was excessive; CMCC reiterated this argument in its opposition to this motion. (Docs. 76 & 123). In its prior opposition, CMCC cited Parker v. Pioneer Credit Co. of Ala., Inc. (In re Parker), 419 B.R. 474, 479 (M.D. Ala.

13

Case 14-08010    Doc 126    Filed 03/03/16    Entered 03/03/16 14:32:16    Desc Main
Document      Page 13 of 17

2009),[16] to argue that a reasonable fee for a "senior" attorney is $250 per hour and that Vaughn should only be entitled to recover between $150 and $174 per hour for work performed by her counsel. (Doc. 76).

"The first step in computing a reasonable fee is to determine the lodestar, which is the product of the number of hours reasonably worked by a lawyer and a reasonable hourly rate." Dillard v. City of Greensboro, 213 F.3d 1347, 1354 (11th Cir. 2000) (per curiam); *cf.* 11 U.S.C. § 330(a); Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) (listing twelve factors for courts to consider in determining the reasonableness of an attorney's fee).[17]

At the outset, the Court notes that Vaughn's counsel has worked an inordinate number of hours for what should have been a relatively simple stay violation case. However, this is not a product of excessive billing or unnecessary work by Vaughn's counsel; rather it was in response to CMCC's well-documented intransigence in this case. *Supra* Part I(A); Vaughn, 542 B.R. at 596-97, 601-02. CMCC has persistently exacerbated the volume of this litigation by filing frivolous objections and motions that marshal specious arguments unhinged from any basis in law or fact. When a § 362 plaintiff's attorney is "forced to make a mountain out of a proverbial molehill" by a defendant for no good reason, the attorney is entitled to bill for the dirt he used. Credit Cent. South, 515 B.R. at 352. Under the circumstances, the Court concludes that the hours Vaughn's counsel has billed for in this case are reasonable.

---

[16] This is a different case than the Credit Central South litigation that has been cited extensively throughout this Decision. To avoid confusion, the Court will refer to this case as Pioneer Credit.

[17] The Eleventh Circuit has adopted as binding precedent all decisions handed down by the former Fifth Circuit as of September 30, 1981. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

In this Court's experience, a reasonable rate for senior bankruptcy attorneys typically falls between $250 and $300 per hour. Vaughn's counsel has been licensed as an attorney for seven years, but has litigated scores of bankruptcy adversary proceedings in that time and has usually obtained successful outcomes for his clients. Moreover, he has demonstrated considerable skill in resolving the difficulties (that were chiefly caused by CMCC) presented in this litigation. "If a young lawyer demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar." Johnson, 488 F.2d at 719.

In addition, "[l]odestar rates may be enhanced based on risk of non-recovery, excellent or exceptional results, or delay in receipt of payment." Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 880 (11th Cir. 1990). Two considerations favor enhancement in this case.

"A court may enhance the fee if there is a risk of non-recovery and if counsel shows that 'such enhancement is necessary to assure the availability of counsel.'" Id. (quoting Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988)). In Credit Central South, the Court permitted the plaintiff to recover attorney's fees at the rate of $350 per hour. Credit Cent. South, 515 B.R. at 351. The Court explained that:

> In approving the award, the Court considers the risk taken by a lawyer such as Wooten. Absent an award of fees, his client will almost certainly be unable to pay. The risk of nonpayment or noncollection of fees is significant. Lawyers who represent banks and well-heeled corporations send a bill every month which is promptly paid. Not so for the lawyer representing consumers who are down on their luck.

Credit Central South, 515 B.R. at 351.

Vaughn's counsel assumed the same risk of non-payment in taking her case. As a bankruptcy debtor, Vaughn will almost certainly be unable to pay him unless she recovers her

15

attorneys' fees as damages from CMCC. To do so required her counsel to prove not only that CMCC willfully violated the automatic stay, but also that her attorneys' fees were actual damages. *Supra* Part II(A). Additionally, there is some risk in this case of Vaughn being unable to collect from CMCC regardless of the outcome on the merits. Because of the risk of non-recovery that a plaintiff-consumer-debtor's attorney faces in prosecuting violations of the automatic stay, § 362 cases are not particularly desirable to most bankruptcy attorneys. In fact, most of the stay violation cases that are filed in this district are filed by Vaughn's counsel because other bankruptcy attorneys do not want them.

Vaughn's counsel also faces a lengthy delay in receiving payment. As discussed above, it is highly unlikely that a consumer bankruptcy debtor will be able to pay her attorney out-of-pocket for prosecuting a stay violation case, so practically speaking that attorney is working on a contingency basis and will not get paid until the defendant satisfies the judgment (assuming there is a judgment to satisfy in the first place). Until then the attorney must bear the litigation costs out of his own pocket and must go uncompensated for his work. This adversary proceeding was filed more than twenty months ago, during which Vaughn's counsel has performed an extensive amount of work that was mostly necessitated by CMCC's contumacious litigation tactics. Vaughn's counsel has gone unpaid to date and will likely remain unpaid for the foreseeable future, with two appeals currently pending and with another appeal to the Eleventh Circuit entirely possible.[18]

---

[18] Again, the Court looks to Credit Central South as a comparison. That case was filed on October 26, 2012. (Case No. 12-01066, Doc. 1). The defendant in that case finally satisfied the judgment on February 23, 2016. (Case No. 12-01066, Doc. 102). The plaintiff's attorney in that case heavily litigated for forty months before he was paid.

Considering the risk and delay faced by Vaughn's counsel, and given the skill he has demonstrated in conducting this litigation, the Court concludes that $325 per hour is a reasonable rate for his work.

### III. CONCLUSION

Vaughn moved for reimbursement of 90.75 hours of work performed by her counsel at $325 per hour. As noted above, she has conceded to reductions in the amount of 10.9 hours. *Supra* note 9. In all other respects, the Court finds the amount of work performed by her counsel and the rate he charges to be reasonable. Therefore, the Court grants Vaughn's motion for attorneys' fees and costs and awards her $25,951.25 in attorneys' fees (for 79.85 hours of work at $325 per hour) and $6.49 in costs, for a total of $25,957.74. The Court will enter a separate order consistent with this opinion.

Done this 3rd day of March, 2016.

United States Bankruptcy Judge

c: Anthony B. Bush, Attorney for Plaintiff
Joseph E. Watson III, Attorney for Defendant